# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

G&A STRATEGIC INVESTMENTS I LLC, et al.

       Plaintiffs,

v.

PDV HOLDING, INC.,

       Defendant,

and

PETRÓLEOS DE VENEZUELA, S.A.,

       Intervening Defendant.

No. 4:24-cv-02774

## <u>DEFENDANT PDV HOLDING, INC.'S MOTION TO DISMISS</u>

# **TABLE OF CONTENTS**

Introduction and Summary of Argument ......................................................1

Background ........................................................................................3

Legal Standard and Applicable Law ........................................................6

Argument...........................................................................................8

    I.    G&A Has Failed to Allege Alter Ego Under Delaware Law. ......................8

        A.    G&A Has Not Alleged "Fraud or Similar Injustice" to Justify
            Piercing PDVH's Corporate Veil...........................................9

        B.    G&A Has Not Alleged "Exclusive Domination and Control"...........11

        C.    G&A Has Not Adequately Alleged that Reverse Veil-Piercing Is
            Equitable or in the Public Interest ......................................15

    II.  G&A's Declaratory Judgment Cause of Action Fails to State a Claim..........20

Conclusion ......................................................................................20

# TABLE OF AUTHORITIES

Cases

*Ace Am. Ins. Co. v. Huntsman Corp.*,
    255 F.R.D. 179 (S.D. Tex. 2008) ..........................................................................10

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
    545 A.2d 1171 (Del. 1988) ...................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................6, 7

*Bollore S.A. v. Imp. Warehouse, Inc.*,
    448 F.3d 317 (5th Cir. 2006)...................................................................................7

*Braidwood Mgmt., Inc. v. EEOC*,
    70 F.4th 914 (5th Cir. 2023) .................................................................................20

*Buck v. Viking Holding Mgmt. Co. LLC*,
    2021 WL 673459 (Del. Super. Ct. Feb. 22, 2021)................................................16

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
    154 A.2d 684 (Del. 1959) .....................................................................................10

*City of Brownsville ex rel. Pub. Utils. Bd. v. AEP Tex. Cent. Co.*,
    348 S.W.3d 348 (Tex. App.—Dallas 2011, pet. denied) .....................................20

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
    2023 WL 5688392 (Del. Ch. Sept. 5, 2023)...........................................................9

*Crosse v. BCBSD, Inc.*,
    836 A.2d 492 (Del. 2003) ................................................................................ 9, 10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380 (D. Del. 2018).........................................................................5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019).....................................................................................5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    2024 WL 325133 (D. Del. Jan. 29, 2024) ..............................................................6

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
  147 F. App'x 195 (2d Cir. 2005) ............................................................16

*EMAK Worldwide, Inc. v. Kurz*,
  50 A.3d 429 (Del. 2012) .......................................................................14

*Enex Int'l, Inc. v. Prime 3 Grp., LLC*,
  2020 WL 6731019 (S.D. Tex. Oct. 27, 2020) ..........................................8

*Gallagher v. McClure Bintliff*,
  740 S.W.2d 118 (Tex. App. 1987) ...........................................................7

*Hyosung Am., Inc. v. Sumagh Textile Co., Ltd.*,
  934 F. Supp. 570 (S.D.N.Y. 1996) .........................................................18

*In re Aluotto*,
  2009 WL 1231988 (Bankr. S.D. Tex. Apr. 29, 2009) ...............................7

*In re Bass*,
  2011 WL 722384 (Bankr. W.D. Tex. Feb. 11, 2011) .................................8

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ........................................................5

*In re The Heritage Org., L.L.C.*,
  413 B.R. 438 (Bankr. N.D. Tex. 2009) .....................................................5

*In re Xtreme Power Inc.*,
  563 B.R. 614 (Bankr. W.D. Tex. 2016) .....................................................4

*Johnston v. Dexel*,
  373 F. Supp. 3d 764 (S.D. Tex. 2019) ......................................................5

*Joint Venture Acquisition v. Misra*,
  1992 WL 212352 (S.D.N.Y. Aug. 25, 1992) .............................................8

*Kelson v. Clark*,
  1 F.4th 411 (5th Cir. 2021).......................................................................6

*Linkers Prods. Corp. v. Canary, LLC*,
  2017 WL 1088350 (S.D. Tex. Feb. 24, 2017) ..........................................8

iv

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
    251 A.3d 694 (Del. Ch. 2021) ....................................................................... passim

*Mason v. Network of Wilmington, Inc.*,
    2005 WL 1653954 (Del. Ch. July 1, 2005) .........................................................13

*Matthews Const. Co. v. Rosen*,
    796 S.W.2d 692 (Tex. 1990) ................................................................... 7, 20

*Nieves v. Insight Bldg. Co., LLC*,
    2020 WL 4463425 (Del. Ch. Aug. 4, 2020) .......................................................14

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
    73 F.4th 157 (3d Cir. 2023)......................................................................5

*Pac. Dev., Inc. v. United States*,
    1979 WL 1283 (D.D.C. Jan. 3, 1979).............................................................12

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
    2024 WL 274246 (Del. Ch. Jan. 25, 2024).................................................11, 14

*Sears, Roebuck & Co. v. Sears plc*,
    744 F. Supp. 1297 (D. Del. 1990).............................................................10, 11

*Trenwick Am. Litig. Tr. v. Billett*,
    931 A.2d 438 (Del. 2007).......................................................................13

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006) ............................................................... 12-13

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008)..............................................................11

*United States v. Jon-T Chems., Inc.*,
    768 F.2d 686 (5th Cir. 1985)....................................................................17

*Valley Fin., Inc. v. United States*,
    629 F.2d 162 (D.C. Cir. 1980) ..................................................................12

*VFS Fin., Inc. v. Falcon Fifty LLC*,
    17 F. Supp. 3d 372 (S.D.N.Y. 2014)..............................................................10

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999) ...................................................... 8, 9, 10

*Winner Acceptance Corp. v. Return on Cap. Corp.*,
   2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ................................11, 15

Statutes

8 Del. C. § 211(b)..............................................................................14

28 U.S.C. § 2201 ...............................................................................20

Tex. Civ. Prac. & Rem. Code Ann. § 31.002 .............................................7

Rules

Federal Rule of Civil Procedure 69 ....................................................7, 8

Regulations

31 C.F.R. § 591.310 ........................................................................ 5, 20

31 C.F.R. § 591.407 ........................................................................ 5, 20

Other Authorities

1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corps.,*
   Ch.2, § 41.85....................................................................................16

Executive Order 13850 .........................................................................5

## Introduction and Summary of Argument

Plaintiffs—all iterations of G&A Strategic Investment Holdings LLC (collectively, "G&A")—seek extraordinary relief and have failed to state a claim for it. In 2018, G&A acquired notes issued by Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of the Bolivarian Republic of Venezuela ("Venezuela" or the "Republic"), and guaranteed by PDVSA's affiliate PDVSA Petróleo S.A. ("Petróleo"). After sitting on the debt for five years, G&A obtained a default judgment against PDVSA and Petróleo in New York. G&A now seeks to execute on the shares of PDVSA's wholly owned American subsidiary, Defendant PDV Holding, Inc. ("PDVH")—a Delaware corporation that was not a party to the underlying action—by claiming that PDVH is PDVSA's alter ego. Instead of the typical alter-ego claim, where the plaintiff seeks to pierce the subsidiary's veil to reach the assets of the parent, G&A seeks to reverse-pierce the (foreign) parent's veil to reach the assets of the (American) subsidiary. The complaint fails to meet the three requirements for reverse veil-piercing under Delaware law and should be dismissed.

**_First_, the complaint alleges no "fraud or similar injustice" in the use of corporate form.** In particular, the complaint does not allege that PDVH was created as a sham to deceive or defraud creditors. On the contrary, PDVH has existed for nearly three decades and is the indirect owner of CITGO Petroleum Corporation ("CITGO"), a major U.S. refiner. G&A does not allege that it was confused

about the difference between PDVSA and PDVH or deceived into thinking that PDVH would pay the notes. It alleges no impairment beyond difficulty collecting from PDVSA, which is not grounds for veil-piercing.

**Second, the allegations fail to plausibly suggest "exclusive domination and control" by PDVSA over PDVH beyond what is typical (and even obligatory) under Delaware law.** G&A alleges instances of overlapping personnel and the payment of dividends from the subsidiary to the parent, but these are legal commonplaces. G&A also invokes Venezuelan officials' political statements and purported authority to act with respect to PDVH, but fails to allege a single fact showing that these officials did anything at all, let alone so dominated the day-to-day operations and management of PDVH that the subsidiary simply functioned as a facade for PDVSA. Nor does G&A allege that PDVH controlled its parent, that any such control harmed G&A, or that PDVH siphoned funds from PDVSA that otherwise would be available to satisfy G&A's judgment—crucial factors considered by Delaware courts when faced with a reverse veil-piercing request.

**Third, G&A cannot demonstrate that reverse-piercing would be equitable or serve the public interest.** The contrary is true. G&A, a sophisticated investor, acquired the notes *after PDVSA was already purportedly in default*. It knew that PDVH had not provided a guaranty or other assurance of payment, as did the original noteholder. When it took the notes, G&A had actual or constructive

2

knowledge of nearly all the facts—which occurred before 2018 and were public—that it now alleges as a basis for disregarding PDVH's separate existence. G&A acquired the notes a year after other creditors began asserting what are now over $21 billion in judgments against PDVSA and the Republic. Moreover, U.S. sanctions law forbids executing on PDVH's property without a license from the U.S. government, which is not alleged to have been issued. In short, G&A gambled on distressed foreign sovereign debt with eyes wide open as to the contractual terms, the potential claims against PDVSA, the corporate relationship between PDVSA and PDVH, and the certainty that it could not collect from PDVSA. G&A's attempt to ask this Court for the assistance of equity should be dismissed.

## Background

In December 2023, G&A sued PDVSA and Petróleo on a series of notes (the "Notes") based on purported breaches of contract that began in 2017 and ended in 2020. ¶¶ 97, 100, 102.[1] *See G&A Strategic Invs. I, LLC v. PDVSA* ("*G&A I*"), No. 1:23-cv-10766-JSR (S.D.N.Y.). On March 8, 2024, G&A obtained a default judgment of over $1.535 billion. ¶ 116. The contract giving rise to the Notes (the "Note Agreement") was executed on May 4, 2017, between PDVSA (issuer), Petróleo (guarantor), and Schlumberger Venezuela, S.A. ("Schlumberger") (noteholder). ¶ 84. On July 20, 2017, Schlumberger assigned the Notes to a corporate affiliate

---

[1] The original state-court petition (Dkt. 1-2) is referred to as the "complaint" and cited as "¶ __."

(¶ 86), which thereafter assigned them to Cowen and Company LLC on October 29, 2018 (¶ 87). Cowen assigned the Notes to G&A on the same day. ¶ 89.

G&A filed this action on June 10, 2024, in the District Court of Harris County, seeking to enforce its default judgment by obtaining a declaration that PDVH is PDVSA's alter ego. PDVH is a Delaware corporation formed in 1997[2] and wholly owned by PDVSA. ¶¶ 9, 37. On July 25, 2024, PDVSA intervened, and PDVSA and PDVH removed to this Court. Dkt. No. 1. On August 1, 2024, PDVSA moved to vacate the default judgment that forms the basis of this action. *G&A I* Dkt. 46.

The alleged facts relating to G&A's alter ego claim mostly predate its 2018 purchase of the Notes. These include statements and conduct of Venezuelan government officials (¶¶ 21–26, 46, 61–67); Venezuela and PDVSA's lack of funds in 2016 to pay the Notes (¶ 26); PDVH's registration as a foreign agent for PDVSA "since its creation" (¶ 31); dividends paid by PDVH to PDVSA starting in 2004 (¶¶ 38–41); debt and collateral issued in 2014–2015 by PDVH's subsidiary, CITGO Holding, Inc. ("CITGO Holding"), which purportedly sent the funds up the chain to PDVSA and then to Venezuela (¶¶ 42–45); and the overlap of the PDVSA and PDVH boards of directors "[f]or decades" (¶ 68), including in the 2000–2018 period (¶¶ 70–83). G&A does not allege that any of these items was beyond public

---

[2] Exhibit A (PDVH Certificate of Incorporation). *In re Xtreme Power Inc.*, 563 B.R. 614, 631 (Bankr. W.D. Tex. 2016) (taking judicial notice, on motion to dismiss, of certificate of incorporation filed with the Delaware Secretary of State) (citing Fifth Circuit jurisprudence).

knowledge when it purchased the Notes. G&A's alter-ego theory also relies in part on a Third Circuit decision affirming a finding of alter ego—for jurisdictional purposes—between the Republic and PDVSA (*not* PDVH).[3] ¶ 35. PDVH did not participate in that appeal.[4] No court has held that PDVH is PDVSA's alter ego.

Federal law prohibits G&A from executing on PDVH's property—*i.e.*, the shares of CITGO Holding. The shares are "blocked property" under the U.S. sanctions regime against Venezuela. E.O. 13850. No execution on the CITGO Holding shares can take place without a specific license from the Treasury Department's Office of Foreign Assets Control ("OFAC"). 31 C.F.R. § 591.407; 31 C.F.R. § 591.310. G&A has not alleged that it sought or has a license.

The complaint also does not mention that G&A acquired the Notes a year after creditors of PDVSA and the Republic[5] filed post-judgment enforcement proceedings in the District of Delaware seeking to execute on PDVSA's shares of PDVH. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151

---

[3] This portion of the complaint presumably refers to *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157 (3d Cir. 2023). PDVH disputes G&A's characterization of that decision and the suggestion that it establishes in this case that the Republic and PDVSA are alter egos. G&A retains its burden under the Delaware alter-ego test, which "must be applied to, and satisfied at, each level or layer of ownership applicable within the multi-faceted entity structure." *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 514 (Bankr. N.D. Tex. 2009); *accord In re HH Liquidation, LLC*, 590 B.R. 211, 273 (Bankr. D. Del. 2018).

[4] On a motion to dismiss, the Court may take judicial notice of "document[s] filed in another court to establish the fact of such litigation and related filings." *Johnston v. Dexel*, 373 F. Supp. 3d 764, 784–85 (S.D. Tex. 2019) (Rosenthal, C.J.).

[5] Creditors of the Republic have been permitted to attach PDVSA's assets based on a finding of alter ego between them. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd*, 932 F.3d 126 (3d Cir. 2019).

(D. Del.) ("*Crystallex*"). In *Crystallex,* a special master is overseeing an auction of the shares of PDVH, with eighteen creditors (holding $21 billion in judgments) seeking to recover.[6] Instead of acting diligently after the assignment, G&A waited nearly five years to sue on the Notes. ¶ 106. G&A submitted filings there about its progress toward a judgment against PDVSA[7] but missed the deadline to participate in the *Crystallex* process.[8] Prevented by its own delays from pursuing PDVSA's assets in Delaware, G&A now seeks to execute on the assets of PDVH on the eve of PDVH itself potentially being sold. The special master in *Crystallex* is expected to recommend a winning bid in August, with a sale hearing to follow this fall.

## Legal Standard and Applicable Law

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021), but need not credit "mere conclusory statements"

---

[6] *Crystallex*, Dkt. 1102, at 3–5 (D. Del. Apr. 3, 2024). PDVH has and continues to object to the *Crystallex* process, including the propriety of some of the attachments and the manner in which the shares are being sold.

[7] *See Crystallex*, Dkt. 1039, Dkt. 1039.1 (G&A's notification of receipt of judgment); *see also Crystallex*, Dkt. 759, Dkt. 759.1, Dkt. 759.2 (claim update); *Crystallex*, Dkt. 675, Dkt. 675.1 (claiming to be a "prospective bidder" of an "[a]ttached [j]udgment" against PDVSA).

[8] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2024 WL 325133, at *2 (D. Del. Jan. 29, 2024) (setting deadline to participate as a creditor by filing motion for writ of attachment "meaningfully in advance of … January 12, 2024[.]").

or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

Delaware law applies to G&A's effort to pierce PDVH's corporate veil. In Texas, piercing the corporate veil is not a standalone cause of action; it is solely a remedy available to support another cause of action. *Gallagher v. McClure Bintliff*, 740 S.W.2d 118, 119 (Tex. App. 1987), *writ denied* (Mar. 2, 1988) ("An attempt to pierce the corporate veil, in and of itself, is not a cause of action but rather is a means of imposing liability on an underlying cause of action such as a tort or breach of contract."); *accord Matthews Const. Co. v. Rosen*, 796 S.W.2d 692, 693 n.1 (Tex. 1990). Accordingly, given that G&A seeks to enforce a default judgment in Texas under the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), its request to pierce PDVH's corporate veil is supplemental to an effort to enforce that judgment. Proceedings to enforce judgments in federal court, along with supplemental proceedings in support thereof, are governed by Federal Rule of Civil Procedure 69(a).[9] *E.g.*, *In re Aluotto*, 2009 WL 1231988, at *2 (Bankr. S.D. Tex. Apr. 29, 2009) (Isgur, B.J.) (invoking Rule 69 to adjudicate issues related to UEFJA).

Rule 69 requires the Court to apply Texas law, including Texas's choice-of-

---

[9] Plaintiffs ask the court to "enforc[e]" the default judgment (Compl. at 29) but do not specify how. PDVH therefore presumes that, at present, Plaintiffs' only goal is to register the judgment in Texas against PDVH. If Plaintiffs seek a turnover order under Tex. Civ. Prac. & Rem. Code Ann. § 31.002, Texas law is crystal clear that a judgment holder cannot litigate the issue of alter ego as part of a turnover proceeding. *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 322–23 (5th Cir. 2006) ("Texas courts have held that a turnover proceeding is not an appropriate vehicle through which to make an alter ego determination and that a separate trial on the merits of that issue is required before the alter ego can be subject to a turnover proceeding.") (collecting cases).

law rules. Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); *Enex Int'l, Inc. v. Prime 3 Grp., LLC*, 2020 WL 6731019, at *2 (S.D. Tex. Oct. 27, 2020) (Edison, M.J.), *R&R adopted,* 2020 WL 6728851 (S.D. Tex. Nov. 16, 2020) (Brown, J.) (applying forum state's choice-of-law rules to determine which substantive law will apply to the turnover proceedings); *accord Joint Venture Acquisition v. Misra*, 1992 WL 212352, at *1 (S.D.N.Y. Aug. 25, 1992). Under Texas law, Plaintiffs' request to pierce PDVH's corporate veil is governed by Delaware law. *In re Bass*, 2011 WL 722384, at *8 (Bankr. W.D. Tex. Feb. 11, 2011) (In Texas, "[c]ourts are required to apply the law of the state of incorporation to corporate veil issues."); *Linkers Prods. Corp. v. Canary, LLC*, 2017 WL 1088350, at *4 (S.D. Tex. Feb. 24, 2017) (Palermo, M.J.), *R&R adopted*, 2017 WL 1082468 (S.D. Tex. Mar. 22, 2017) (Hoyt, J.).

## Argument

### I.    G&A Has Failed to Allege Alter Ego Under Delaware Law.

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). It requires a court to make two findings: "exclusive domination and control" by one entity over the other and that "the corporate

8

structure cause[d] fraud or similar injustice." *Id.* at 1184. Typical veil-piercing involves a creditor seeking to reach the assets of a debtor's parent corporation. G&A here seeks to "reverse veil-pierce"—*i.e.*, to disregard the parent's separate existence to attach the subsidiary's assets. In addition to the two requirements above, a reverse-pierce plaintiff must prove that taking the extraordinary step of holding a corporation liable for the debts of its shareholder would be equitable in light of the interests of the corporation's creditors, innocent third parties, and other important public policies. *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 716 (Del. Ch. 2021). G&A has failed to adequately plead these three requirements.

### A. G&A Has Not Alleged "Fraud or Similar Injustice" to Justify Piercing PDVH's Corporate Veil.

The alter-ego claim fails because G&A has not plausibly alleged "fraud or similar injustice" through misuse of the corporate form. The Delaware Supreme Court has held that, "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created *a sham entity designed to defraud investors and creditors*." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (emphasis added); *accord Wallace*, 752 A.2d at 1184 ("[T]he corporation must be a sham and exist for no other purpose than as a vehicle for fraud."); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *6 (Del. Ch. Sept. 5, 2023) ("The fraud or injustice must, however, 'come from an inequitable use of the corporate form itself as a sham[.]'")

9

(collecting cases). Reverse-piercing is no exception: "[a] creditor of the parent corporation may not, in the absence of fraud, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959). "[T]he alleged fraud or inequity must be distinct from the … underlying cause of action." *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990). Establishing that "the corporate structure cause[s] fraud or similar injustice" is rare. *Wallace*, 752 A.2d at 1184.

G&A's allegations of fraud or similar injustice are conclusory. The complaint simply states: "PDVSA abused the corporate form to perpetrate a wrong or injustice." ¶ 133. G&A does not—and cannot—allege that PDVSA "created [PDVH as] a sham entity," *Crosse*, 836 A.2d at 497, or that PDVH, the longstanding parent of a major oil refiner and other companies, exists solely "as a vehicle for fraud," *Wallace*, 752 A.2d at 1184. This failure alone is sufficient to dispose of the alter ego claim. *E.g.*, *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 198, 208 (S.D. Tex. 2008) (Rosenthal, J.) (failure to allege "fraud or similar injustice" is basis to dismiss Delaware alter ego allegation); *accord VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 384 (S.D.N.Y. 2014).

G&A complains that it cannot "recover the money" purportedly owed to it by PDVSA, ¶ 129, but "Delaware courts have held that the possibility that a plain-

tiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008).[10] There was no "injustice" anyway: it is G&A's business to gamble on the risk of non-collection. Moreover, though assets existed to satisfy PDVSA's debts, G&A sat on its claim for five years and lost the race to the courthouse.

### B. G&A Has Not Alleged "Exclusive Domination and Control."

Even if the complaint had sufficiently alleged fraud, G&A's allegations of "extensive control" by PDVSA over PDVH are conclusory or otherwise insufficient. Under Delaware law, "there exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors." *Principal Growth Strategies, LLC v. AGH Parent LLC*, 2024 WL 274246, at *16 (Del. Ch. Jan. 25, 2024). Instead, Delaware courts consider five factors to assess "extensive control": (1) undercapitalization, (2) insolvency, (3) adherence to corporate formalities, (4) whether the controlling shareholder siphoned company funds, and (5) whether the company functioned as a facade for the parent. *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008); *Manichean Cap.*, 251 A.3d at 706–07 (considering same in reverse veil-piercing context). G&A ticks through most of these factors,

---

[10] Nor can G&A establish "similar injustice" merely by alleging that PDVSA defaulted on the Note, as "the alleged fraud or inequity must be distinct from the . . . underlying cause of action." *Sears*, 744 F. Supp. at 1305.

*e.g.*, ¶¶ 128, 130, 132, but its allegations are insufficient to state a claim.

    *Undercapitalization, solvency, & siphoning of funds*. Under a traditional veil-piercing analysis, where a subsidiary's creditor attempts to reach the parent's assets, it makes sense to consider whether the parent undercapitalized the subsidiary, rendered it insolvent, or siphoned its funds. But that conduct should be irrelevant in a reverse-piercing context, where it helps the creditor to enhance the parent's financial standing. *See Pac. Dev., Inc. v. United States*, 1979 WL 1283, at *2 (D.D.C. Jan. 3, 1979), *aff'd sub nom. Valley Fin., Inc. v. United States*, 629 F.2d 162 (D.C. Cir. 1980). G&A misses this distinction. It alleges that years ago, PDVSA caused PDVH to send too many dividends to PDVSA and that PDVH tied up its assets in pledges to benefit PDVSA, so that now PDVH "does not have the funds to pay dividends." ¶ 131; ¶ 128; *see also* ¶ 132 (associating same conduct with the facade factor). Even accepting that such allegations *could* support reverse-piercing, G&A's allegations misunderstand Delaware law and the relationship between a company and its wholly owned subsidiary. Under Delaware law, PDVH's alleged conduct is not unusual and does not supply a basis to pierce the veil.

    Directors of a wholly owned subsidiary (like PDVH) have fiduciary duties to operate the company for the benefit of their shareholder (like PDVSA) and indeed are authorized by law to follow a sole shareholder's instructions. *E.g.*, *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988); *Tren-*

*wick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 201–03 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (directors of a subsidiary are "entitled to follow the parent's instructions" and have no "duty to second-guess the business judgment of its parent corporation when following and supporting the parent's strategy would not" be unlawful). Assuming as true for present purposes the conclusory allegation that PDVSA instructed PDVH to issue dividends and pledge its assets for PDVSA's benefit, PDVH's management acted in conformance with Delaware law by following that instruction. Delaware law does not permit piercing the corporate veil based on conduct that PDVH's management is either entitled or obliged by Delaware law to perform.

It also is untenable to characterize dividends from a subsidiary to a parent company as a "siphoning" of funds. The dividends that G&A complains of took place years ago and, more importantly, only *enhanced* PDVSA's financial standing, meaning that—if anything—they inured to G&A's benefit as a creditor of PDVSA.

*Corporate Formalities*. G&A again recites buzzwords intended to map onto Delaware law. ¶ 123 (alleging "on information and belief" that "some of the corporate records and/or corporate formalities relating to corporate records are incomplete"); ¶ 130 (same); *see, e.g., Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005) (listing whether "corporate records [were] kept" as a consideration regarding corporate formalities). The complaint is bereft

of actual examples. G&A does allege that "PDVSA failed to observe corporate formalities when its President reviewed PDVH's contracts," ¶ 130, but allowing a parent to review the subsidiary's contracts is not a failure to observe "corporate formalities." Even so, the allegation is conclusory. Though the complaint alleges that PDVSA's president had *authority* to review PDVH contracts and that a Venezuelan official had the *authority* to modify PDVH's management and administration, ¶¶ 81, 130, 132, G&A fails to cite an example where either power was actually exercised, let alone to override the business judgment of PDVH's management.

*General Facade*. G&A alleges sporadic overlap between the boards of PDVSA and PDVH. ¶¶ 68–81, 132. It is well-settled in Delaware that the overlap of directors between members of a corporate family does not suffice to pierce the corporate veil. *Nieves v. Insight Bldg. Co., LLC*, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) (presumption of separate corporate existence "applies even where one corporation wholly owns another and even though the entities have identical officers and directors"); *Principal Growth Strategies*, 2024 WL 274246, at *16 (same). G&A's allegation that PDVH's directors were "nonfunctioning" because "they were appointed by PDVSA" (¶ 132) is likewise a conclusory *non sequitur*. Sole shareholders not only have the power to appoint directors but are the only ones authorized to do so. 8 Del. C. § 211(b) (providing that directors are elected by shareholder(s) of company); *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433

14

(Del. 2012) ("The fundamental governance right possessed by shareholders is the ability to vote for the directors the shareholder wants to oversee the firm.").[11]

G&A's remaining allegations of control are, again, conclusory. *E.g.*, ¶ 127 ("At all relevant times, PDVSA and PDVH operated as one entity."); ¶ 137 ("PDVSA has exercised significant and extensive dominion and control over PDVH."). This will not suffice. Piercing the veil should occur only in the "exceptional case." *Winner Acceptance*, 2008 WL 5352063, at *5. G&A's conclusory march through the "extensive control" prong of the alter-ego test demonstrates nothing out of the ordinary for wholly owned Delaware subsidiaries.

### C. G&A Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable or in the Public Interest.

In a reverse-piercing case, a plaintiff must also demonstrate that disregarding corporate separateness is equitable in light of the interests of creditors, third parties, and public policy. Eight factors inform this inquiry.[12] *Manichaean*, 251 A.3d

---

[11] G&A also alleges that PDVH has registered with the Department of Justice under the Foreign Agents Registration Act of 1938 ("FARA") as a foreign agent of PDVSA. ¶ 31. This does not suffice to show that PDVH is a facade either. This registration was not a secret—and thus there was no "facade"—and the complaint acknowledges that PDVH's advocacy to the U.S. government advances PDVH's *own* interests. ¶¶ 31, 32, 34, 36.

[12] These are: "(1) the degree to which allowing a reverse pierce would impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct of the insider that gave rise to the reverse pierce claim, and the degree to which allowing a reverse pierce would establish a precedent troubling to shareholders generally; (2) the degree to which the corporate entity whose disregard is sought has exercised dominion and control over the insider who is subject to the claim by the party seeking a reverse pierce; (3) the degree to which the injury alleged by the person seeking a reverse pierce is related to the corporate entity's dominion and control of the insider, or to that person's reasonable reliance upon a lack of separate entity

at 715. G&A's complaint does not adequately allege even a single one of the relevant factors, and the facts it has alleged make clear that reverse-piercing would not be equitable here. The absence of equity is another reason G&A's complaint must be dismissed.

*First*, G&A cannot establish "reasonable reliance upon a lack of separate entity status between" PDVSA and PDVH (Factor 3). G&A bought the Notes with actual or constructive knowledge of the facts that it now alleges support alter ego, but it consciously declined to obtain any guaranty, pledge of collateral, or other protection from PDVH. "[V]eil piercing in the contract context is infrequent [] because the party seeking relief 'is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of limited liability associated with the business form.'" *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 198 (2d Cir. 2005) (quoting 1 Fletcher Cyc. Corp. § 14.85).[13] Courts, including the Fifth Circuit, consistently

status between the insider and the corporate entity; (4) the degree to which the public convenience, as articulated by the Delaware General Corporation Law and Delaware's common law, would be served by allowing a reverse pierce; (5) the extent and severity of the wrongful conduct, if any, engaged in by the corporate entity whose disregard is sought by the insider; (6) the possibility that the person seeking the reverse pierce is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief; (7) the extent to which the reverse pierce will harm innocent third-party creditors of the entity the plaintiff seeks to reach; and (8) the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt." *Manichaean*, 251 A.3d at 715 (cleaned up).

[13] Delaware courts apply a similar concept in protecting parent companies from tortious interference claims when a subsidiary acts at the parent's direction, so as to prevent "faulty approaches to corporate veil piercing." *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *6 n.60

require a party seeking to pierce the corporate veil in a contract case to demonstrate that it was duped about the separate corporate existence of its counterparty's affiliates *at the time of contracting*; otherwise, there is no equitable basis to pursue a corporate affiliate from which it could have negotiated a guaranty (or sought other protection) at the time of contracting. *E.g.*, *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 693 (5th Cir. 1985) ("If the creditor wants to be able to hold the parent liable for the subsidiary's debts, it can contract for this."). Here the relevant contract is the assignment in October 2018. ¶ 89. G&A knew that the Note Agreement lacked a guaranty from PDVH and acquired the Notes with knowledge of all the facts up to that date. The fact that executing directly against PDVSA or Petróleo may have been difficult does not demonstrate that G&A relied upon the alleged lack of separateness between PDVSA and PDVH.

Furthermore, G&A did not inherit Schlumberger's knowledge as though it were frozen in 2017, free to ignore anything that happened from issuance of the Notes to the October 2018 assignment.[14] On the contrary, investors like G&A acquire distressed debt at a substantial discount to face value precisely because they anticipate the difficulty of collection. But even if G&A's knowledge were nonsen-

---

(Del. Super. Ct. Feb. 22, 2021) ("A party who wishes to have a parent entity or other controller backstop the obligations of the controlled entity can do so by contract, either by making the parent a party to the agreement or by obtaining a guarantee. A party should not be able to … reap the benefits of protections that it did not obtain at the bargaining table.") (collecting cases).

[14] *See* ¶¶ 52 & 55–59 (Fall 2016 pledges of PDVH assets); ¶ 65 (December 2017 resolution by Venezuelan government); ¶ 66 (April 2018 decree by President Maduro).

sically judged as of the time Schlumberger obtained the Notes, most of G&A's al-ter-ego allegations predate the May 2017 Note Agreement as well.[15] If G&A is deemed the successor to Schlumberger's knowledge, then it also succeeded to Schlumberger's failure to obtain a guaranty or collateral pledge from PDVH.[16] *Hyosung Am., Inc. v. Sumagh Textile Co., Ltd*., 934 F. Supp. 570, 576 (S.D.N.Y. 1996) ("[T]he knowledge of an assignor must be attributed to its assignee.").

*Second*, G&A does not allege that PDVH controlled PDVSA (Factor 2) or that PDVH itself engaged in "wrongful conduct" (Factor 5). On the contrary, the allegations indicate that PDVH acted consistently with its fiduciary obligations and its authority to follow instructions of its sole shareholder. G&A makes no allega-tion—nor could one conceivably be made—that PDVH's nonexistent control over PDVSA or nonexistent wrongful conduct caused G&A's injury (*i.e.*, PDVSA's fail-ure to pay on the Notes) (Factor 3). Indeed, G&A alleges that eight years ago, PDVSA left PDVH undercapitalized by causing it to pay dividends and to make

---

[15] ¶ 31 (alleging PDVH registered as a foreign agent for PDVSA "since its creation"); ¶ 38 (al-leging that President Chavez "ordered Citgo to pay" dividends to PDVSA, presumably through PDVH); ¶ 39 (2005 political speech); ¶ 40 (2006 Chavez actions); ¶ 41 (2013 press reports about CITGO dividends); ¶ 42 (2014 press coverage of CITGO financing); ¶¶ 43–45 (2015 CITGO Holding debt issuance); ¶ 46 (2012 and 2014 Venezuelan officials' speeches); ¶ 61 (alleging Ven-ezuela considered PDVH an instrument of the Venezuelan people for *decades*); ¶ 62 (citing PDVSA's articles of incorporation—PDVSA was incorporated in 1976); ¶ 63 (2002 and 2007 Venezuelan court decisions); ¶¶ 68–81 (citing "decades" of overlap between corporate boards).

[16] Indeed, the complaint alleges that Schlumberger knew at the time of contracting that PDVSA lacked assets and faced crushing liabilities, ¶¶ 23, 26, 54, 85, and the Note Agreement itself *does* provide for a guarantor: Petróleo. This shows that Schlumberger could and did know how to bar-gain for a guaranty from one of PDVSA's affiliates.

pledges to support PDVSA's own borrowing. *See* ¶¶ 128, 129. If anything, this only *enhanced* PDVSA's (*i.e.*, G&A's debtor's) ability to pay.

*Third*, piercing PDVH's veil threatens PDVH's innocent shareholders and third-party creditors (Factors 1, 6, 7). *Manichaean*, 251 A.3d at 716. G&A alleges that piercing would "not impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct that gave rise to the claim." ¶ 134. This is misleading. The shares of PDVH are currently subject to the *Crystallex* process. If PDVH is sold to a new owner, and G&A is subsequently permitted in *this* proceeding to seize PDVH's major asset, then G&A will have interfered with the disposition of PDVH's assets and undermined the "legitimate expectations" of PDVH's (potential and foreseeable) new shareholders.

*Fourth*, G&A is wrong that piercing PDVH's veil "would not establish a precedent troubling to shareholders generally" (¶ 135) or disserve the "public convenience" (¶ 139) (Factors 1 & 4). As explained above, G&A seeks to pierce PDVH's veil based on conduct that under Delaware jurisprudence does *not* warrant disregard of the corporate form. A decision in G&A's favor would thus contravene Delaware public policy and dilute Delaware law's stringent protection of corporate separateness.[17] Moreover, G&A's requested relief is currently prohibited under

---

[17] G&A alleges that piercing PDVH's veil would advance the United States' interest as a "center of finance and commerce." ¶ 139. This is immaterial since the relevant public policy is that of

U.S. sanctions law (Factor 4) absent a license from OFAC, which G&A did not allege to have sought or obtained. 31 C.F.R. § 591.407; 31 C.F.R. § 591.310.

*Finally*, G&A did have another remedy available to it (Factor 8): pursuing its claims against PDVSA diligently and seeking to attach the shares of PDVH through, or parallel to, the *Crystallex* process.

## II.    G&A's Declaratory Judgment Cause of Action Fails to State a Claim.

G&A's complaint alleges a "cause of action" seeking a declaration that PDVH is the alter ego of PDVSA. ¶¶ 143–149. But declaratory relief and alter ego are not independent causes of action under either Texas or federal law. *City of Brownsville ex rel. Pub. Utils. Bd. v. AEP Tex. Cent. Co.*, 348 S.W.3d 348, 357 (Tex. App.—Dallas 2011, pet. denied) (Texas law); *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) (federal Declaratory Judgment Act, 28 U.S.C. § 2201); *Matthews*, 796 S.W.2d at 693 n.1. Apart from its substantive defects, the alter-ego cause of action should be dismissed as technically deficient.

## Conclusion

For the foregoing reasons, G&A's complaint should be dismissed.

---

Delaware (Factor 4). In any event, diluting the alter-ego rules in Delaware (the lead jurisdiction for corporate law) would not improve the United States' standing as a commercial center, but would in fact harm that standing.

Dated: August 1, 2024

Respectfully submitted,

By: /s/ *Nathan P. Eimer*
Nathan P. Eimer
State Bar No. 24001478
S.D. Tex. No. 31213
Scott C. Solberg (*pro hac vice pending*)
Daniel D. Birk (*pro hac vice pending*)
James W. Joseph (*pro hac vice pending*)
Gregory M. Schweizer (*pro hac vice pending*)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
dbirk@eimerstahl.com
jjoseph@eimerstahl.com
gschweizer@eimerstahl.com

*Attorneys for Defendant*
*PDV Holding, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, pursuant to Federal Rule of Civil Procedure 5(b) and Local Rule 5.3, a true copy of **Defendant PDV Holding, Inc.'s Motion to Dismiss** was filed on August 1, 2024 via the court's CM/ECF system, which will automatically serve a Notice of Electronic Filing to all registered users.

I further certify that true and correct copies of the Motion will be served via electronic mail to the following:

Justin Waggoner
Eugene Zilberman
STEPTOE LLP
717 Texas Ave., Suite 2800
Houston, TX 77002
jwaggoner@steptoe.com
ezilberman@steptoe.com

Michael J. Baratz
Emma Marshak
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
mbaratz@steptoe.com
emarshak@steptoe.com

*Attorneys for Plaintiffs*
*G&A Strategic Investments I LLC, et al.*

/s/ *Nathan P. Eimer*
Nathan P. Eimer